ISAAC W. NESTLERODE V. CHARLES FOSTER.

1. DEFENDANT CANNOT GO BEHIND RECORD.

In a proceeding to revive a dormant judgment where the record of the judgment shows that the court had jurisdiction of the person of the defendant, and of the subject-matter of the action, the defendant cannot go behind the record of the judgment and make a defense which existed anterior to the judgment.

2. DEFENDANT MAY SHOW THAT HIS RELATION WAS THAT OF SURETY.

In such proceeding, however, a defendant may show that his relation to the judgment is that of a surety; and may interpose any defense accruing subsequently to the judgment, such as payment, satisfaction or release, or anything done under the original judgment, which exonerates him from liability.

3. SURETY NOT SUBROGATED AGAINST CO-SURETY, THOUGH THE LATTER APPEARS AS PRINCIPAL.

A surety who pays as a judgment against himself and S. and N. to which he alone is certified to be a surety, is not subrogated against N., who is in fact a co-surety. Section 5386, Rev. Stat., applies only against the principal debtor and N. may show he was co-surety.

ERROR to the Court of Common Pleas of Seneca county.

DAY, J.

The record discloses that on December 27, 1875, Norman Saltzman brought suit, and on January 7, 1876, recovered judgment for $115.00 before J. A. Bradner, J. P., against Wm. Sabins, I. W. Nestlerode and Charles Foster on a promissory note of date November 23, 1874, and due in six months. Before the rendition of the judgment summons was issued against all the defendants, and as to I. W. Nestlerode returned as served by leaving a certified copy with the indorsement at his usual place of residence. In the entry of judgment it was certified that C. Foster was surety. The entry as to Sabins and Nestlerode was general, and contained no certificate or statement as to the position of the judgment occupied by Nestlerode; only a judgment against him and Sabins in general terms. Bail for stay of execution was put in by Sabins, and execution was stayed until in September, 1886. Execution was then issued and returned on the same day, showing no property belonging to the defendant could be found upon which to levy, and on November 7, 1876, C. Foster paid the judgment in full. No steps were taken by Foster to keep the judgment alive, and it became dormant about November 7, 1881. On May 29, 1888, Foster instituted proceedings before the same Mr. Bradner, J. P., to revive the judgment by filing a motion for that purpose. In the motion Foster alleged that the fact that he was surety merely was certified in the entry of judgment; that as such surety he had paid the judgment in full, and asked its revival in his favor and against the principals under the provisions of sec. 5836, Rev. Stat. A conditional order was made requiring the defendant Nestlerode to show cause, if any there was, why a revival should not be had by June 6, else a revival, as asked for, would be ordered. A copy of this order was served on Nestlerode, and on the day fixed the parties appeared and the matter was, on motion and showing, adjourned from time to time until July 26, 1888, when trial was had. At the trial Nestlerode offered evidence tending to prove that he was not served with summons, and was not in court at the rendition of the original judgment. Objection to the introduction of this evidence was sustained and exception taken. He also offered to prove, by competent evidence, that he was a surety only for Sabins, and occupied no other position in the claim than that of surety—co-surety with Foster. Objection was also made to this evi-

dence, sustained and exception noted. The questions were brought into the record by bills of exception. The conditional order of revivor was made absolute, and the judgment revived in favor of Foster and against Nestlerode for the amount of the judgment and costs. Nestlerode excepted and prosecuted error to the common pleas court, which court sustained the judgment of the J. P. Error is prosecuted to this court, and a reversal of the judgment of both the lower courts is asked.

It is said the court erred in excluding evidence offered to prove that Nestlerode was not summoned and was not in court when the judgment was originally entered. We think not. The record shows the court, entering the judgment, had jurisdiction of the person of defendant, and of the subject-matter of the action, and was clothed with full power to act, and having done so, all questions involved were conclusively adjudicated and settled, and not subject to again be questioned in a proceeding to revive the judgment, it having become dormant. In a proceeding in revivor it is not competent to relitigate the question involved in the original suit or to collaterally impeach the record and judgment. In such proceeding the defendant "cannot go behind the returns" or interpose any defense which existed anterior to the judgment; he is limited and confined to defenses accruing subsequently to the judgment; such as payment, or its equivalent, or something that has been done, under the original judgment, which exonerates him from liability—something that goes directly to the judgment and shows its satisfaction or ending. We, therefore, hold the justice properly excluded evidence offered not having for its purpose the establishing of some such defensive fact.

Another assignment of error is the court erred in refusing to allow Nestlerode to prove that his position on the note and in the judgment was that of surety, and that, in fact, his liability was only that of surety. This criticism, we think, is well deserved. The court was clearly wrong in that ruling.

Sureties are favorites of the law, and their rights as such are to be protected under all proper circumstances. "They are never to be visited with penalties, and their liability is never to be extended beyond the strict letter of the obligation into which they have entered," says the supreme court. The fact of suretyship may be established by evidence *aliunde*, and a person asserting the fact has an unquestioned right to his "day in court" for the purpose of having the truth of the question tried and judicially determined; and in respect, even, of opportunity for hearing and judicially determining the matter, opportunities are afforded that are rather exceptional and unusual. In line of and supporting this idea is the decision of the supreme court reported in 25 O. S., at page 89, case of Gatch v. Simkins, in which it was held that a finding by a justice's court of the fact of suretyship in a matter pending in that court, was not conclusive and did not prevent the matter from being further inquired into whenever the question became pertinent. From all this we understand the rule to be that the fact of suretyship and the rights and benefits accruing and belonging to that relation may be ascertained and enforced in any legal proceeding where they arise or may be called in question. It follows, perforce, if Foster and Nestlerode were co-sureties for Sabins at the beginning of the transaction—at the making of the note—nothing appearing to the contrary, the relation probably continues to exist; and the question not having been submitted and judicially ascertained, Nestlerode is entitled to his day in court and an opportunity to establish his claim by competent evidence, if he can do so. We think the evidence offered was pertinent and competent, and should have been received and considered.

Again, we think the proposed inquiry was proper and the evidence admissible in another view, and under the operation of the rule already stated: that in a proceeding to revive a judgment a defendant may interpose any defense accruing subsequent to the judgment, such as payment, satisfaction, etc., or anything done under the judgment which exonerates him from liability. The effect of the proposed showing that Foster and Nestlerode were co-sureties for Sabins, if made

out by the weight of evidence, would be to interpose in behalf of Nestlerode the legitimate defense of payment of something done under the judgment exonerating him from liability thereunder.

It must be borne in mind that Foster was surety for Sabins, and so certified in the entry, and that, as such surety, he paid the judgment in full, including all costs, in November, 1876. By express provision of law, sec. 5836, Rev. Stat., payment by a surety does not end the judgment so far as the principal debtor is concerned, but the surety is subrogated to the rights of the judgment creditor, and the judgment remains in force against the principal debtor for the benefit of the surety. There is no provision or rule of law, however, keeping life in the judgment as against a surety. The rule is to the contrary, and payment of a judgment by one surety inures to the benefit of a co-surety and cancels and ends it as to both of them, only leaving to the paying surety a right of action against his co-surety for contribution. But as to all sureties, payment of a judgment by one cancels and ends it as to all.

So that, in either view, the evidence offered tending to establish the fact of suretyship in Nestlerode was admissible to show that the judgment—the thing sought to be revived and made alive again—had, in fact, been paid, and an end put to it as to him, and he released from all liability under it by the kindly act of his co-surety.

For the error pointed out, the judgment of the common pleas court is reversed, with costs; and the court rendering the judgment the common pleas should have rendered, reverses the judgment of the justice's court, and retains the cause, in the common pleas, to be further proceeded with according to law. Cause remanded to the common pleas court to be further proceeded with.

Moore and Seney, JJ., concur.

*C. L. Guernsey*, for plaintiff in error.

*F. S. Monnett*, and *J. V. Jones*, for defendant in error.